UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| ALLIED WORLD SURPLUS LINES ) <br> INSURANCE COMPANY, and ALLIED ) <br> WORLD ASSURANCE COMPANY, ) <br>   ) <br>             Plaintiffs, ) <br>   ) <br>   v. ) <br>   ) <br> DAY SURGERY LIMITED LIABILITY ) <br> COMPANY, d/b/a/ DAY SURGERY ) <br> CENTER, LLC, et al., ) <br>   ) <br>             Defendants. ) | Civil Action No. 2:17-cv-04286 <br><br> Hon. Thomas E. Johnston |

**MEMORANDUM IN SUPPORT OF ALLIED WORLD
SURPLUS LINES INSURANCE COMPANY AND ALLIED
WORLD ASSURANCE COMPANY'S MOTION FOR RECONSIDERATION**

Plaintiffs Allied World Surplus Lines Insurance Company and Allied World Assurance Company (collectively, "Allied World") moved for summary judgment regarding the operation of a primary and an excess Allied World policy when, as here, the insured faces multiple claims arising from multiple instances of alleged sexual misconduct by a single actor. The named insured, Day Surgery Limited Liability Company ("Day Surgery"), DS Holdings, Inc. ("DS Holdings"), and the underlying claimants are defendants in this action and also moved for summary judgment regarding the policies' operation. The Court' March 31, 2020 Memorandum Opinion and Order (ECF No. 304) (the "Summary Judgment Ruling" or "Ruling") granted in part and denied in part the parties' cross motions for summary judgment.

The instant motion seeks reconsideration on one issue where the Summary Judgment Ruling inadvertently committed clear error by relying upon allegations found only in superseded pleadings. *See, e.g.*, *First Tenn. Bank Nat'l Ass'n v. St. Paul Fire & Marine Ins. Co.*, 501 F. App'x

255, 257 n.2 (4th Cir. 2012) (determining coverage based on allegations of operative amended complaint because the original complaint "became a nullity upon the filing of the amended complaint"). In addressing whether the excess policy issued to Day Surgery provides potential indemnity coverage for the underlying action, the Ruling held that all but two claimants' underlying claims were barred by that policy's sexual misconduct exclusion. (ECF No. 304 at 20). As to the remaining two claimants, A.G. and P.P., the Ruling found that their *First* Amended Complaint included negligence claims "based on [alleged] facts wholly unrelated to the alleged sexual misconduct." (ECF No. 304 at 12-13). The Ruling found that these entirely "nonsexual" negligence claims prevented the Court from concluding that the excess policy provided no potential coverage for A.G. and P.P.'s claims. This is the specific part of the Ruling for which reconsideration is requested. The Ruling dismissed without prejudice Allied World's request for a declaration that there is no coverage under the excess policy for the underlying claims.

However, A.G. and P.P.'s *operative* complaint does not contain the negligence claims relied upon in the Ruling. A.G. and P.P.'s operative Second Amended Complaint contains no counts based only on facts wholly unrelated to the alleged sexual misconduct. Critically, all counts in A.G. and P.P.'s Second Amended Complaint plainly arise from and involve alleged sexual misconduct. Accordingly, the excess policy's sexual misconduct exclusion precludes coverage for all underlying claims, and Allied World is entitled to a declaration to this effect.[1]

I. FACTUAL BACKGROUND

A. The Matulis Claims

Former doctor Steven R. Matulis, M.D. ("Matulis") has been accused of sexually abusing anesthetized female patients during their gastroenterology procedures at, among other places, Day

---

[1] Allied World limits its motion to the narrow issue presented herein without waiving its rights to seek appellate relief on additional issues and grounds.

2

Surgery. The individuals named as defendants in this action (the "Matulis Claimants") allege that they were injured as a result of Matulis' sexual misconduct and have asserted claims against Day Surgery and others (the "Matulis Claims")

### B. The Excess Policy

Allied World issued to Day Surgery policies including Healthcare Excess and Umbrella Liability Insurance Policy No. 0305-4101 for the February 1, 2016 to February 1, 2017 **Policy Period** (the "Excess Policy"). (ECF No. 115-20). The Excess Policy contains the following sexual misconduct exclusion:

> This Policy shall not apply to any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving[] . . . any actual or alleged sexual misconduct or sexual abuse, including, but not limited to, any physical acts or oral statements of a sexually suggestive manner, or any unwelcome physical contact or touching[.]

(*Id.* at 23, 27).

### C. The A.G. and P.P. Claim

A.G. and P.P. are proposed class representatives for a putative class action against Day Surgery, Matulis, and others. A.G. and P.P.'s operative complaint, the Second Amended Complaint, was filed on or around October 19, 2018 (the "Second Amended Complaint"). (ECF No. 250-2 at 1-33). Prior to filing the Second Amended Complaint, A.G. filed her initial complaint in November 2016 (ECF No. 250-1 at 31-47) (the "Initial Complaint"), and a first amended complaint in March 2018 (ECF No. 115-6) (the "First Amended Complaint" and collectively, the "Superseded Pleadings").

The Second Amended Complaint differs from the Superseded Pleadings in several material respects. Most important for purposes of this motion, the Second Amended Complaint does not include either of the two counts alleged in the Superseded Pleadings that provided the express basis for the portion of the Ruling for which reconsideration is requested.

**The Abandoned "Medical Negligence" Count**

The Initial Complaint and First Amended Complaint each contained two counts for "medical negligence," one that alleged a pattern and practice of sexual misconduct (ECF No. 250-1 at 40-41; ECF No. 115-6 at ¶¶ 16-22) and another that alleged Matulis performed colonoscopies too quickly (ECF No. 250-1 at 41-42; ECF No. 115-6 ¶ 24). It was this latter count that the Court relied upon in concluding the First Amended Complaint contained counts wholly unrelated to the alleged sexual misconduct. (ECF No. 304 at 12-13).

But, the operative Second Amended Complaint does not include a comparable count. It asserts a single medical negligence count that alleges the putative class members were harmed by Matulis's, Day Surgery's, and others' failure to obtain and document consent for Matulis's unauthorized vaginal and/or breast examinations:

> Defendants failed to meet the applicable standards of care and violated this duty of care through various negligent acts including failing to obtain consent from Plaintiffs, and those similarly situated, to perform vaginal and/or breast examinations and failing to document the consent in their medical charts.

(ECF No. 250-2 at 16).

**The Abandoned "Negligence" Count**

The Superseded Pleadings also each contained a materially identical count denominated "negligence" against Day Surgery. The negligence count asserted, *inter alia*, Day Surgery "deviated from the standard of care by either failing to implement . . . quality assurance or performance review or by doing so in an unreasonable manner with respect to Matulis," allowing him to perform colonoscopies in a less than competent or professional manner. (ECF No. 250-1 at 42-43; ECF No. 115-6 ¶¶ 31-33). The Ruling also cited this "negligence" count in concluding that the First Amended Complaint contained counts wholly unrelated to the alleged sexual misconduct. (ECF No. 304 at 12-13).

But, once again, the operative Second Amended Complaint abandoned this count—--the very count the Court relied upon in the Ruling. Instead, the Second Amended Complaint contains a new count for Professional Impairment that seeks to recover for Day Surgery's alleged failure to prevent Matulis's pattern and practice of sexually molesting patients by conducting unauthorized breast and/or vaginal exams:

> 89. Prior to the time period alleged above, during which Dr. Matulis began the pattern and practice of performing breast and/or vaginal examinations without consent and without documentation in the patients' medical chart, said Dr. Matul[i]s became professionally impaired such that he undertook to perform unauthorized procedures on female patients for his own personal interest while performing medical procedures on female patients in the manner described above.
>
> 90. The aforesaid condition is a known risk and danger to patients by professionally impaired physicians and other impaired medical care providers. It is a deviation from the standard of care for a physician, like Dr. Matulis, to perform a colonoscopy or similar procedure while professionally impaired in the manner described above and the standard of care requires that a patient who receives such a procedure under such circumstances be given the option of receiving a new procedure by an unimpaired physician.
>
> 91. Defendant Day Surgery Center and Defendant Charleston Gastroenterology had the duty and obligation to provide professional oversight and procedures to protect Plaintiffs and those similarly situated, from physicians who might create a risk to patients while under the care and treatment of physicians who have developed said condition.
>
> 92. Defendants Day Surgery Center and Charleston Gastroenterology failed through oversight as set forth above and by quality assurance measures to institute rules, reporting and education and safeguards for their patients which would have prevented the acts and conduct alleged above.

(ECF No. 250-2 at 23-24).[2]

---

[2] The Second Amended Complaint also adds P.P. as a representative member of the proposed class. (*Compare* ECF No. 115-6 at 3 *and* ECF No. 250-2 at 4 (adding Jane Doe 2 as proposed class representative)).

5

### D.     The Summary Judgment Ruling

Allied World's motion for summary judgment sought, *inter alia*, a declaration that the Excess Policy's sexual misconduct exclusion precludes all coverage for the Matulis Claims. (ECF No. 250 at 2). Allied World's summary judgment briefing attaches a copy of the Second Amended Complaint and cites to it. (ECF No. 250-2 at 1-33; ECF No. 251 at 3-4).

Defendants' summary judgment briefing erroneously cited allegations in the Superseded Pleadings and A.G.'s purported notice of claim that are not in operative Second Amended Complaint, including the allegations identified above regarding (1) Matulis performing colonoscopies too rapidly (ECF No. 268 at 7; ECF No. 279 at 6; ECF No. 280 at 8) and (2) Day Surgery failing to implement adequately quality assurance or performance review processes to detect flawed colonoscopies (ECF No. 268 at 7; ECF No. 279 at 6).

The Summary Judgment Ruling holds that the Excess Policy's sexual misconduct exclusion bars coverage for all Matulis Claims except those of A.G. and P.P. (ECF No. 304 at 20). The Ruling found that two A.G. and P.P. negligence counts were "based on facts wholly unrelated to the alleged sexual misconduct," and cited the following paragraphs:

> 24. Dr. Matulis deviated from accepted standards of medical care by failing to comply with the minimum time requirements for the careful withdrawal of the colonoscope from Plaintiff during the . . . colonoscopy as he withdrew the colonoscope too rapidly. As a proximate result, the colonoscopy Dr. Matulis performed on Plaintiff was not medically reliable, should not be used to make diagnostic decisions about Plaintiff, and it is reasonably necessary for Plaintiff to be given the option to receive a new colonoscopy by a competent physician within the standard of care, and at the expense of Dr. Matulis and any other Defendant liable for his conduct.
>
> . . .
>
> 32. [Day Surgery] deviated from the standard of care by either failing to implement . . . quality assurance or performance review or by doing so in an unreasonable and inadequate manner with respect to Dr. Matulis.

(ECF No. 304 at 12-13 (quoting ECF No. 115-6 at ¶¶ 24, 32)). These paragraphs and the counts they pertain to appear in the First Amended Complaint but do not appear in the operative Second Amended Complaint. Based on the cited First Amended Complaint paragraphs and counts, the Ruling holds that the Excess Policy's sexual misconduct exclusion might not bar coverage for A.G. and P.P. if a trier of fact found, as arguably formerly alleged, that they suffered injuries from negligent conduct unrelated to Matulis's alleged sexual misconduct (ECF No. 304 at 20-21). Because it found the now-abandoned nonsexual counts in the First Amended Complaint might be covered, the Ruling held the Excess Policy issue was not ripe for determination and dismissed it without prejudice pending resolution of the underlying claims. (*Id.* at 21).

## II. ARGUMENT

### A. Legal Standard

Motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure may be granted in three situations: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence . . . ; or (3) to correct a clear error of law or prevent manifest injustice." *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020) (citation omitted). Rule 60(b) permits reconsideration of an "final judgment, order, or proceeding" for reasons including the following: "(1) mistake, inadvertence, surprise or excusable neglect; . . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

"Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint 'of no effect.'" *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017). Coverage thus is determined by reviewing the insurance policy and the allegations of the *operative* complaint:

> We focus on the allegations of [claimant's] amended complaint-in-intervention rather than [claimant's] original, multi-count complaint. *The original complaint*,

7

which was dismissed without prejudice, *became a nullity upon the filing of the amended complaint*.

*First Tenn. Bank Nat'l Ass'n v. St. Paul Fire & Marine Ins. Co.*, 501 F. App'x 255, 257 n.2 (4th Cir. 2012) (determining coverage based on allegations of operative amended complaint) (emphasis added). *See also Erie Ins. Prop. & Cas. Co. v. Viewpoint, Inc.*, No. 5:12-CV-81, 2013 U.S. Dist. LEXIS 30646, at *2 (N.D.W. Va. Mar. 6, 2013) (considering the allegations in claimant's state court second amended complaint to determine coverage).

### B. The Summary Judgment Ruling's Resolution of the Excess Policy Issue Is an Inadvertent Mistake and in Clear Error Because It Relies Upon a Superseded Pleading

The Summary Judgment Ruling's dismissal without prejudice of the Excess Policy issue is subject to reconsideration under both Rules 59(e) and 60(b) because the Ruling clearly errs by inadvertently relying upon superseded allegations not present in A.G. and P.P.'s operative complaint. As set forth above, the Ruling held that the Excess Policy's sexual misconduct exclusion precluded coverage for all Matulis Claims except A.G.'s and P.P.'s. (ECF No. 304 at 20). The Ruling's findings with respect to A.G.'s and P.P.'s claims focused on paragraphs 24 and 32 in Counts II and V respectively of A.G.'s First Amended Complaint. (*Id.* at 12-13, 20). Count II (Medical Negligence) alleged that Matulis failed to comply with the "minimum time requirements for the careful withdrawal of the colonoscope from Plaintiff during the aforementioned colonoscopy as he withdrew the colonoscope too rapidly." (ECF No. 115-6 ¶ 24). Count V (Negligence – Day Surgery Center) alleged that Day Surgery Center's failure to "implement such quality assurance or performance review or . . .doing so in an unreasonable and inadequate manner with respect to Dr. Matulis" allowed Matulis to perform potentially flawed colonoscopies. (ECF No. 115-6 ¶¶ 32-33).

8

However, A.G. and P.P. are no longer asserting the allegations and counts upon which the Ruling relies. (ECF No. 250-2 at 15-26). The First Amended Complaint in which they appeared is a nullity because it has been superseded by the Second Amended Complaint. *See Fawzy*, 873 F.3d at 455 ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint 'of no effect.'"). The operative Second Amended Complaint's only Medical Negligence count alleges the defendants failed to obtain and record patient consent for Matulis's unauthorized vaginal and breast "exams." (ECF No. 250-2 at 16-17). And the Second Amended Complaint count closest to First Amended Complaint Count V alleges that Day Surgery's failure to provide adequate professional oversight allowed Matulis to engage in a pattern and practice of performing unauthorized vaginal and breast exams. (*Id.* at 23-24). Indeed, all counts in the Second Amended Complaint are based upon and involve Matulis's alleged sexual conduct. (*See id.* at 15-26).

The Excess Policy's sexual misconduct exclusion thus precludes coverage for A.G. and P.P.'s Second Amended Complaint. The Excess Policy's sexual misconduct exclusion provides:

> This Policy shall not apply to any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving[] . . . any actual or alleged sexual misconduct or sexual abuse, including, but not limited to, any physical acts or oral statements of a sexually suggestive manner, or any unwelcome physical contact or touching[.]

(ECF No. 115-20 at 23, 27). As established in Allied World's memorandum in support of its motion for summary judgment (ECF No. 251) this sexual misconduct exclusion is unambiguous and very broad. (*Id.* at 17-18).[3] *See, e.g., NCMIC Ins. Co. v. Endeshaw,* No. 09-1999 (RHK/FLN), 2010 U.S. Dist. LEXIS 87247, at *7 (D. Minn. Aug. 24, 2010) (holding sexual misconduct

---

[3] Allied World incorporates by reference the sections in its summary judgment briefing that interpret and apply the sexual misconduct exclusion. (*See* ECF No. 251 at 17-18; ECF No. 282 at 9-13; ECF No. 291 at 12-14).

9

exclusion barred coverage for entire underlying lawsuit because all causes of action "necessarily relied upon sexually inappropriate conduct" to establish that defendants' negligence injured claimant).[4] A.G. and P.P.'s operative counts are all based upon, arise out of, in any way involve, etc. Matulis's alleged performance of unauthorized vaginal or breast exams on anesthetized patients. (*See* ECF No. 250-2 at 15-26). Accordingly, the sexual misconduct exclusion bars all coverage under the Excess Policy for A.G. and P.P.'s claims. As the Court has already found that this exclusion precludes coverage for the other Matulis Claims, the Court should enter a declaration that the Excess Policy affords no coverage for the Matulis Claims.

### III. CONCLUSION

For the reasons set forth above, Allied World requests that this Court reconsider the Summary Judgment Ruling and enter a declaratory judgment that the Excess Policy affords no coverage for the Matulis Claims.

Dated: April 28, 2020                              Respectfully submitted,

   /s/   Charles R. Bailey
BAILEY & WYANT, PLLC
Charles R. Bailey (WV Bar # 0202)
Josef A. Horter (WV Bar # 1790)
500 Virginia St., East, Suite 600
P.O. Box 3710
Charleston, West Virginia 25337-3710
cbailey@baileywyant.com
jhorter@baileywyant.com

Lewis K. Loss (*pro hac vice*)

---

[4] *See also Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co.*, 734 F.3d 51, 56 (1st Cir. 2013) (describing "in any way involving" as a "a mop-up clause intended to exclude anything not already excluded by the other clauses" that does not require any causal element); *Huggins v. Tri-Cty. Bonding Co.*, 337 S.E.2d 12, 17 (W. Va. 1985) (describing use of "arising out of" in exclusions as "expansive language").

Brent H. Olson (*pro hac vice*)
DYKEMA GOSSETT PLLC
1301 K Street NW
Suite 1100 West
Washington, DC 20005
202-906-8600
lloss@dykema.com
bholson@dykema.com

*Counsel for Plaintiffs Allied World Surplus Lines Insurance Company and Allied World Assurance Company*